UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TINA ZINGALES,

      Plaintiff,

v.   CASE NO. 3:21-cv-793-MCR

ACTING COMMISSIONER OF
THE SOCIAL SECURITY
ADMINISTRATION,

      Defendant.
_____/

**<u>MEMORANDUM OPINION AND ORDER</u>**[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision regarding her applications for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). Following an administrative hearing held on January 28, 2021, the assigned Administrative Law Judge ("ALJ") issued a decision, finding Plaintiff not disabled from November 24, 2012, the amended alleged disability onset date, through February 12, 2021, the date of the decision.[2]

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 15.)

[2] Plaintiff had to establish disability on or before December 31, 2016, her date last insured, in order to be entitled to a period of disability and DIB. (Tr. 16.) The earliest time that SSI benefits are payable is the month following the month in

(Tr. 15-54.) Based on a review of the record, the briefs, and the applicable law, the Commissioner's decision is **AFFIRMED**.

## I. Standard of Review

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery*

---

which the application was filed. *See* 20 C.F.R. § 416.335. Plaintiff's SSI application was filed on August 2, 2019. (Tr. 15.)

*v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II. Discussion

### A. Issue on Appeal

Plaintiff argues that the ALJ erred by failing to include limitations resulting from her bilateral carpal tunnel syndrome ("CTS") into the residual functional capacity ("RFC") assessment and hypothetical question to the vocational expert ("VE"). (Doc. 17 at 5-6.) Plaintiff explains:

> [T]here are positive Phelan's tests for carpal tunnel in the records and several references to the presence of a history of carpal tunnel with the notation that no surgery has been performed to correct that condition. Although there are no nerve conduction studies in the file[,] there are multiple references to the carpal tunnel condition. The ALJ does not mention the presence of this condition or more importantly the existence of any limitations or restrictions on the [P]laintiff's ability to perform work in her hypotheticals to the VE.

(*Id.* at 7.) Plaintiff argues that a remand is required "for further medical and vocational analysis to include the limitations concerning the [CTS] and the impairments of the left and right hands." (*Id.* at 8.)

Defendant responds that "the ALJ considered Plaintiff's allegation of disabling CTS and reasonably concluded that it was not a medically

3

determinable impairment" at step two of the sequential evaluation process,[3] because "there was no diagnostic testing in the record confirming CTS" and because "the medical record [was] scant in terms of Plaintiff's alleged CTS." (Doc. 18 at 1, 5-7.) Defendant explains:

> Later treatment notes from August 2019 reference Plaintiff's reported history of CTS diagnosed "by EMGs" (short form for electromyography testing), but also indicate that she never underwent surgery to correct it (Tr. 740). Accordingly, she was referred to an orthopedist for "potential surgery" (Tr. 747).
>
> Nonetheless, as Plaintiff herself admits . . . , there is no documentation of EMG and/or nerve conduction testing outside of this one treatment note, which was based on her self-report. Likewise, there is no record of any referrals for CTS surgery, including Plaintiff denying any such history at her December 2019 consultative examination (Tr. 787). . . .
>
> Furthermore, even assuming *arguendo* that CTS caused Plaintiff's alleged hand symptoms, the critical inquiry is whether the ALJ considered Plaintiff's complaints of pain, regardless of its source. Here, the ALJ not only considered these complaints, but accounted for the same in her rather generous RFC finding, limiting Plaintiff to sedentary lifting/carrying requirements (no more than 10 pounds . . . , only occasional pushing and pulling of hand controls bilaterally, and only occasional overhead reaching bilaterally . . . .)
>
> The ALJ also discussed and considered Plaintiff's complaints of symptoms throughout her decision, even after determining that her CTS was not medically determinable at step two . . . . Thus, Plaintiff's argument that the ALJ failed to even mention her alleged CTS and related pain is simply incorrect . . . . In reality, Plaintiff failed to meet her burden to produce evidence showing that she is further limited.

---

[3] The Commissioner employs a five-step process in determining disability. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

(*Id.* at 7-10.)

### B. The ALJ's Decision

At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity ("SGA") since November 24, 2012. (Tr. 17.) She explained, in relevant part:

> The claimant stated she thought she worked for most of 2018 and possibly one month in 2019 which would make her earnings close to [the] SGA level; however, since she was unsure of the exact months, the [ALJ] has given her the benefit of the doubt that her earnings were below levels of SGA. It is noted that this level of work activity does reflect on the claimant's allegations of total disability since her amended onset date of 2012.

(Tr. 18.)

At step two, the ALJ found that Plaintiff had the following severe impairments: "remote breast cancer with left breast mastectomy currently in remission; obesity; lymphedema; lumbago; lower extremity polyarthropathy/neuropathy with venous insufficiency; right rotator cuff impingement; and mild left knee arthritis." (*Id.*) With respect to Plaintiff's CTS, the ALJ stated:

> As set forth in 20 CFR [§§] 404.1508 and 416.908, an impairment must result from anatomical, physiological, or psychological abnormalities, which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by the claimant's statement of symptoms. While the claimant has alleged [CTS], the medical record fails to establish this

5

> impairment by diagnostic testing. Thus, the record is devoid of evidence to establish [CTS] as a medically determinable impairment.

(*Id.*)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 20.) Then, before proceeding to step four, the ALJ determined that Plaintiff had the RFC to perform sedentary work "with occasional pushing and pulling of foot and hand controls bilaterally; occasional overhead reaching with the bilateral upper extremities, occasional climbing of ramps and stairs, and occasional balancing, stooping, kneeling, and crouching." (Tr. 21.) Further, Plaintiff needed to avoid crawling; climbing of ladders, ropes, and scaffolds; and exposure to hazards, including unprotected heights, moving mechanical parts, operating a motor vehicle, and vibration. (*Id.*)

In determining the RFC, the ALJ discussed the evidence of record and "considered all symptoms and the extent to which these symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence." (*Id.*) The ALJ summarized Plaintiff's testimony as follows:

> The claimant testified that she stopped working because she had problems reaching with her left arm[,] and her neuropathy and pain cause problems with standing and reaching as a cashier. . . . She also stated that she has carpal tunnel. She stated that her 25-year-old daughter helps her with some household chores and

6

> with dressing, but she is able to bathe herself.  In describing a typical day, the claimant testified that she drives her son to school in the morning and she changes positions often during the day due to left arm and back pain.  She stated that she could sit for 10 to 15 minutes, stand for 9 minutes before her back and feet hurt, and lift and carry a gallon of milk. . . .

(Tr. 22.)

Then, the ALJ determined that although Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (*Id.*)  The ALJ explained that the objective medical evidence did "not support the degree of limitation alleged by the claimant since the amended onset date." (*Id.*)  Specifically, the ALJ discussed records documenting Plaintiff's arm pain, lymphedema in the left upper extremity, polyarthropathy, neuropathy, chronic pain syndrome, and "multiple tender points through the soft tissues of the bilateral upper extremities," among other conditions.  (Tr. 22-24.)  The ALJ also discussed the consultative examination from December of 2019 as follows:

> [The claimant] had full range of motion of the upper extremity joints, including the wrists, elbows, and shoulders.  Examination of [the] upper extremities showed no motor or sensory deficits.  Grip strength was 5/5 bilaterally.  Fine manipulation skills were normal at both upper extremities.  She had no difficulty manipulating buttons or opening doors.  There was no tenderness noted of the shoulders, elbows, wrists or hands on the right.  There was mild pain noted with the Phalen's test on the right.

7

> Tinel's testing of the hands/wrists was negative for pain bilaterally. The left arm exhibited severe lymphedema from the left axilla to the wrist. There was moderate pain noted with palpation of the musculature of the upper arm and forearm. . . . The claimant was diagnosed with left arm, bilateral hand, bilateral hip and bilateral knee pain and lymphedema.

(Tr. 24.)

The ALJ then stated:

> Overall, the objective medical evidence establishes the claimant's multiple impairments; however, the radiographic and clinical examination findings remain fairly benign. . . . The medical evidence further establishes left upper extremity lymphedema with moderate pain of the upper arm and forearm musculature; however, the claimant maintains a good range of motion of the left upper extremity and she has no limitations with her right upper extremity. Furthermore, the detailed findings by the consulting examiners are consistent with no motor or sensory deficits of the upper extremities, full grip strength bilaterally and normal fine manipulation skills, and no difficulty manipulating buttons or opening doors. Recent evidence in September 2020 shows a new diagnosis of right shoulder impingement; however, the examination findings of the right shoulder were unremarkable and the claimant was neurologically intact and with full range of motion of the right upper extremity.

(Tr. 25.)

Further, after summarizing Plaintiff's daily activities, the ALJ stated:

> Moreover, the claimant has worked in 2015, 2016, 2018, and 2019, performing cashier duties. While some of this work activity may not constitute [SGA], it does show that her activities of daily living are far greater than expected given her alleged symptoms and limitations, including her testimony of her inability to sit, stand or walk for more than a few minutes. Most notably, her work activity for the year 2018 is near the level of [SGA] (Exhibit B11D). In addition, the claimant returned to work as a cashier for a significant period after the alleged onset date, which

required her to lift and carry 50 pounds, which is inconsistent with her testimony that she could lift and carry no more than a gallon of milk or sit, stand or walk for [sic] more than a few minutes.

Furthermore, the claimant takes only ibuprofen for chronic pain, which suggests that her pain symptoms are not as severe as alleged (Exhibit B25E).

For all of the above reasons, the [ALJ] finds that the claimant's testimony and statements do not support an inability to perform sedentary work with the manipulative, postural and environmental restrictions, as defined in the assessed [RFC]. The [ALJ] finds that this assessed [RFC] adequately takes into account all of the claimant's symptoms and limitations, as established by the medical record and other evidence of record since the amended onset date.

(Tr. 26-27.)

The ALJ also stated that she had "fully considered the medical opinions and prior administrative medical findings." (Tr. 27.) The ALJ addressed the consultative examination findings as follows:

The consulting examiner opined the following: the claimant has no motor or sensory deficits on physical examination (Exhibit B23F). Grip strength and fine manipulation skills are normal at both upper extremities. . . . The claimant has obvious lymphedema of the left arm. This condition will likely not ever completely resolve and will likely impact her ability to function for the remainder of her life even with adequate medical care. It seems reasonable that she will have difficulty obtaining and maintaining employment in her current state of health. The [ALJ] finds this opinion evidence unpersuasive, as it is not consistent with the fairly benign examination findings and no specific deficits noted by the doctor. It appears the doctor was relying on the subjective complaints of the claimant in his opinion. While the claimant has some limitation from her impairments, there is nothing noted by the doctor during his

9

examination that would preclude all employment.

(*Id.*)

The ALJ found the State agency non-examining consultants' opinions that Plaintiff was capable of light work to be "persuasive," but, based on the updated medical evidence at the hearing level, the ALJ assessed an RFC for no more than sedentary work with additional manipulative restrictions. (*Id.*) The opinion evidence from Plaintiff's boyfriend and daughter was deemed "non-persuasive" because:

> [F]amily members and friends are not medically trained to make exacting observations, and therefore the accuracy of the statements is questionable. While these opinions offer insight into the severity of the claimant's impairments and how they affect her ability to function, this type of opinion evidence is reserved to the Commissioner pursuant to 96-Sp, although must be taken into consideration pursuant to SSR 06-3p. Nonetheless, this opinion evidence has been considered; however, [it is] simply not consistent with the preponderance of the evidence in this case, as detailed above.

(Tr. 27-28.)

Then, at step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. (Tr. 28.) At the fifth and final step of the sequential evaluation process, considering Plaintiff's age, education, work experience, RFC, and the VE's testimony, the ALJ determined that there were jobs existing in significant numbers in the national economy that Plaintiff could perform, such as a call out operator, a document preparer, and

10

an order clerk. (Tr. 28-29 (also stating that all of these representative occupations are sedentary, unskilled jobs with a specific vocational preparation ("SVP") of 2).) Therefore, the ALJ concluded that Plaintiff was not disabled from November 24, 2012 through February 12, 2021. (Tr. 29.)

### C.     Analysis

The Court finds that the ALJ's decision is based on correct legal standards and is supported by substantial evidence in the record. First, the ALJ reasonably concluded that Plaintiff's CTS was not a medically determinable impairment at step two of the sequential evaluation process, because "the medical record fail[ed] to establish this impairment by diagnostic testing." (Tr. 18.) Plaintiff does not dispute that there are no nerve conduction studies in the file, even though there have been some positive Phelan's tests and several references to Plaintiff's history of CTS with the notation that no surgery had been performed to correct it. (Doc. 17 at 7.)

Also, even if the ALJ erred by not finding Plaintiff's CTS to be a severe impairment, the error would be harmless, because the ALJ found at least one severe impairment. *See Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 824-25 (11th Cir. 2010) (per curiam) ("Even if the ALJ erred in not indicating whether chronic pain syndrome was a severe impairment, the error was harmless because the ALJ concluded that [plaintiff] had a severe

11

impairment: [sic] and that finding is all that step two requires. . . . Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe."); *see also Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 902 (11th Cir. 2011) (stating that in the Eleventh Circuit, "[t]he finding of any severe impairment . . . is enough to satisfy step two because once the ALJ proceeds beyond step two, he is required to consider the claimant's entire medical condition, including impairments the ALJ determined were not severe").

Moreover, contrary to Plaintiff's argument, the ALJ did not ignore Plaintiff's CTS, but discussed it at step two and beyond. (*See* Tr. 18, 22-25.) For example, in determining the RFC, the ALJ noted Plaintiff's testimony of having CTS. (Tr. 22, 48; *see also* Tr. 340-41, 344-45, 347, 378.) The ALJ also discussed, *inter alia*, Plaintiff's chronic pain, including arm and hand pain, multiple tender points throughout the soft tissues of the bilateral upper extremities, lymphedema in the left upper extremity, neuropathy, and polyarthropathy. (Tr. 22-24.) The ALJ noted that Plaintiff's bilateral "hand radiography was negative," which is supported by substantial evidence. (Tr. 24; Tr. 673 (showing normal hand X-rays on July 22, 2019); Tr. 975-76 & 982 (showing normal ultrasound of the left upper extremity on March 15, 2020); Tr. 981 (noting that X-rays of the left wrist from March 15, 2020 were normal except for "degenerative arthrosis of the carpometacarpal articulation of the

12

thumb" and "[s]oft tissue edema about the wrist and hand").) The ALJ also properly observed that during the December 2019 consultative examination, Plaintiff "had full range of motion of the upper extremity joints, including the wrists, elbows, and shoulders," she had "no motor or sensory deficits" in the upper extremities, she "had no difficulty manipulating buttons or opening doors," she had no tenderness in "the shoulders, elbows, wrists or hands on the right," her "Tinel's testing of the hands/wrists was negative for pain bilaterally," her grip strength was 5/5, and her fine manipulation skills were normal in both upper extremities, even though mild pain was noted with the Phalen's test on the right, her "left arm exhibited severe lymphedema from the left axilla to the wrist," and there was moderate pain "with palpation of the musculature of the upper arm and forearm." (Tr. 24, 789.) After discussing Plaintiff's examinations and treatment, the ALJ acknowledged that Plaintiff's "multiple physical impairments in combination [were] limiting," but she was still "capable of sedentary work with the additional manipulative, postural and environmental restrictions" assessed in the RFC. (Tr. 26.)

The ALJ's findings pertaining to Plaintiff's CTS and any related hand limitations are supported by substantial evidence. There are several references in the record to Plaintiff's bilateral CTS, including a diagnosis of CTS on May 12, 2014, June 13, 2014, July 11, 2014, October 22, 2014, and

13

August 6, 2019. (*See, e.g.*, Tr. 98; Tr. 140-41; Tr. 526; Tr. 538; Tr. 542; Tr. 544-46; Tr. 725; Tr. 906 (reporting a history of CTS in the right wrist and experiencing "some numb and tingling sensations in her fingers"); Tr. 1000; *see also* Tr. 747 (diagnosing CTS on August 6, 2019 and recommending that Plaintiff be re-referred to the St. Augustine orthopedic clinic that "did her EMGs for potential surgery of the right carpal tunnel for some relief of her symptoms"); Tr. 740 (noting that Plaintiff was diagnosed with CTS "by EMGs," but she had never had surgery for it, and was told that she could not have surgery on her left arm because of her lymphedema); Tr. 595 (noting bilateral wrist pain secondary to CTS).)

Some of Plaintiff's examinations revealed a positive Phalen's Sign in her bilateral wrists, and one examination revealed a positive Tinel's Sign in the right hand and moderate pain with motion. (Tr. 526, 530, 534, 538, 542, 546, 577; *see also* Tr. 670 (noting "[m]ultiple exquisite tender points throughout [the] soft tissues of [Plaintiff's] bilateral upper extremities").) However, as Plaintiff admits, there are no nerve conduction studies in the file and no record of any surgery (or referral for surgery) for Plaintiff's CTS. (*See* Tr. 787 ("There is no history of surgery in regards to her hands. The claimant had nerve conduction studies for evaluation of the pain but there are no results available for review at the time of this evaluation.").) Further, the examination notes showed that Plaintiff's pain was "reasonably controlled

14

and stable with current medications." (Tr. 524, 532; *see also* Tr. 536 (reporting "doing better on medications" and refusing the pain pump); Tr. 580 (noting that Plaintiff's "[P]ercocet has been reduced to 2 per day with fair control of her pain"); Tr. 750 (noting on August 22, 2019 that Plaintiff was taking only Gabapentin, which helped to keep the edge off of her pain).)

The ALJ's consideration of Plaintiff's December 2019 consultative examination is also supported by substantial evidence in the record. At the evaluation, Plaintiff reported "a history of bilateral hand pain since 2010" and added:

> The pain is constant, burning/tingling and is rated 8 out of 10 on the pain scale. The claimant states that she can only lift one pound with her left arm as noted above. There are no other symptoms associated with the pain. The claimant has difficulty with grip strength on the left. She reports difficulty with using buttons and zippers due to her pain. The claimant states that she can perform all activities of daily living without difficulty.

(Tr. 787.) Despite Plaintiff's complaints, however, the examination of her upper extremities was largely unremarkable except for her lymphedema:

> The upper extremities reveal full [range of motion] of all upper extremity joints[,] including the wrists, elbows, and shoulders, except those abnormalities as noted on the [range of motion] sheet. No evidence of cyanosis or clubbing. Examination of [the] upper extremities shows no motor or sensory deficits. Grip strength is 5/5 bilaterally. Fine manipulation skills are normal at both upper extremities. No difficulty manipulating buttons or opening doors. There is no tenderness noted on exam of the shoulders, elbows, wrists or hands on the right. There is mild pain noted with the Phalen's test on the right. Tinel's testing of the hands/wrists is negative for pain bilaterally. The left arm

15

> exhibits severe lymphedema from the left axilla to the wrist. There is moderate pain noted with palpation of the musculature of the upper arm and forearm.

(Tr. 789.)[4] The ALJ accurately addressed and properly considered the consultative examination findings in arriving at the RFC. (*See* Tr. 27 ("The [ALJ] finds this opinion evidence unpersuasive, as it is not consistent with the fairly benign examination findings and no specific deficits noted by the doctor. It appears the doctor was relying on the subjective complaints of the claimant in his opinion. While the claimant has some limitation from her impairments, there is nothing noted by the doctor during his examination that would preclude all employment.").)

As shown by the ALJ's decision, she adequately considered all of Plaintiff's impairments, both severe and non-severe, in combination. Furthermore, while the ALJ considered all of Plaintiff's impairments, she incorporated into the RFC assessment only those limitations resulting from

---

[4] Based on the examination findings, Plaintiff was diagnosed with left arm pain, lymphedema, bilateral hand pain, bilateral hip pain, and bilateral knee pain. (Tr. 790.) The consultative examiner concluded:
> The claimant has no motor or sensory deficits on physical examination. Grip strength and fine manipulation skills are normal at both upper extremities. Gait and balance are normal. The claimant has obvious lymphedema of the left arm. This condition will likely not ever completely resolve and will likely impact her ability to function for the remainder of her lift [sic] even with adequate medical care. It seems reasonable that she will have difficulty obtaining and maintaining employment in her current state of health. The claimant should also have further evaluation for her hand, hip and knee pain.

(*Id.*)

16

the impairments, which she found to be supported by the record. In sum, even if the ALJ erred in finding Plaintiff's CTS to be a non-severe impairment, a remand is not warranted, because the ALJ considered all of Plaintiff's impairments, both severe and non-severe, in combination at subsequent steps of the sequential evaluation process and her decision is supported by substantial evidence.

### III.  Conclusion

The Court does not make independent factual determinations, re-weigh the evidence, or substitute its decision for that of the ALJ. Thus, the question is not whether the Court would have arrived at the same decision on *de novo* review; rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence. Based on this standard of review, the ALJ's decision that Plaintiff was not disabled within the meaning of the Social Security Act for the time period in question should be affirmed.

Accordingly, it is **ORDERED**:

1. The Commissioner's decision is **AFFIRMED**.

2. The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, on September 1, 2022.

*[signature]*
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record